Jennifer B. Rubin, Esq.
e-mail: jbrubin@mintz.com
Michael S. Arnold, Esq.
e-mail: msarnold@mintz.com
Mintz, Levin, Cohn, Ferris,
  Glovsky and Popeo, P.C.
The Chrysler Center
666 Third Avenue,
New York, New York 10017
(212) 935-3000

*Attorneys for Defendant AVX Corporation*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

JUDAH WOLF,                              :

                    Plaintiff,           :

          -against-                      :

AVX CORPORATION,                         :

                    Defendant.           :

-------------------------------------------------------x

Index No. _____

**NOTICE OF REMOVAL**

        Defendant AVX Corporation, a Delaware corporation with a principal place of business

in South Carolina, sued in an action styled <u>JUDAH WOLF v. AVX CORPORATION, New</u>

<u>York County, Index No. 600090/2008</u> concerning AVX Corporation, which was brought in the

Supreme Court of the State of New York, New York County, Index No. 600090/2008, hereby

removes this civil action from the Supreme Court of the State of New York to the United States

District Court, Southern District of New York, and gives notice hereof, upon the following, in

accordance with 28 U.S.C. §§ 1441 and 1446:

        1.        An action with the title set forth above was commenced in the Supreme Court of

the State of New York, New York County by the filing of the Summons and Complaint on or

about January 11, 2008.  Plaintiff effectuated service and first notified Defendant of this suit on January 17, 2008.

2.    This action is a civil action that seeks a declaration from the Court as to the parties' rights, obligations and remedies under an employment agreement.

3.    Defendant AVX Corporation is a corporation formed under the laws of Delaware with a principal place of business in the State of South Carolina.

4.    Plaintiff is an individual citizen and resident of the State of Florida, with an address located at 4206 Laurel Oak Way, Ponte Vedra Beach, Florida 32082.

5.    The Plaintiff seeks declaratory relief in his Complaint regarding a claim that he is entitled to recover two times his base salary of $184,000 (Complaint, ¶¶11-12, 20, 24(d), (f), 26; Exhibit A (Employment Agreement, §9(a)). The amount in controversy therefore exceeds $75,000, exclusive of costs and interest.

6.    The action is one in which the District Court has original jurisdiction by reason of the complete diversity of citizenship of the parties.

7.    Copies of all pleadings and process served on Defendant by Plaintiff are annexed hereto as Exhibit A.

WHEREFORE, Defendant requests that this case proceed as an action properly removed hereto.

Dated:  January 28, 2008
        New York, New York

                                    MINTZ LEVIN COHN FERRIS
                                    GLOVSKY AND POPEO, P.C.

                              By:_____
                                    Jennifer B. Rubin, Esq.
                                    e-mail: jbrubin@mintz.com
                                    Michael S. Arnold, Esq.
                                    e-mail: msarnold@mintz.com
                                    The Chrysler Center
                                    666 Third Avenue
                                    New York, New York  10017
                                    (212) 935-3000

                                    *Attorneys for Defendant AVX Corporation*

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

SERVICE COPY

-------------------------------------------------------------x

JUDAH WOLF,

Plaintiff,

- against -

AVX CORPORATION,

Defendant

-------------------------------------------------------------x

SUMMONS

Index No.: 600090/2008

Plaintiff designates New York
County as the place of trial.

The venue designated is pursuant
to a written agreement fixing the
place of trial as New York County.

To the above named Defendant:

   **YOU ARE HEREBY SUMMONED** and required to serve upon Plaintiff's attorney at
the address stated below, an answer to the attached complaint.

   If this summons was personally served upon you in the State of New York, the answer
must be served within twenty days after such service of the summons, excluding the date of
service.  If the summons was not personally delivered to you within the State of New York, the
answer must be served within thirty days after service of the summons is complete as provided
by law.

   If you do not serve an answer to the attached complaint within the applicable time
limitation stated above, a judgment may be entered against you, by default, for the relief
demanded in the complaint, without further notice to you.

   The action will be heard in the Supreme Court of the State of New York, in and for the
County of New York.  This action is brought in the County of New York pursuant to a written
agreement fixing the place of trial as New York County.

Dated: January 9, 2008
       New York, New York

NEW YORK
COUNTY CLERK'S OFFICE

JAN 11 2008

NOT COMPARED
WITH COPY FILE

By: Joel Bernstein, Esq.
Solomon & Bernstein
Attorneys for Plaintiff
351 Broadway, Third Floor
New York, New York 10013
(212) 545 - 8611

Notice:    The nature of this action is for a declaratory and all costs incurred.

To:   Evan Slavitt, Esq.
      Attorney for Defendant
      P.O. Box 867
      Myrtle Beach , SC 29578-0867

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------x
JUDAH WOLF,

                              Plaintiff,                                    **VERIFIED COMPLAINT**

              - against -                                                   Index No.:

AVX CORPORATION,

                              Defendant.
-------------------------------------------------------------------x

The Plaintiff, as and for its complaint against the Defendant respectfully alleges as

follows:

1.     Plaintiff Judah Wolf, [hereinafter "Wolf"] is an individual with an address

located at 4206 Laurel Oak Way, Ponte Vedra Beach, Florida, 32082

2.     American Technical Ceramics Corp. [hereinafter "ATC Corp."] was a Delaware

corporation, having its principal place of business at all relevant times at One Norden Lane,

Huntington Station, New York, 11746.

3.     Wolf entered into a written contract entitled "Employment Agreement" with

ATC Corp. dated December 31, 2001 [hereinafter the "Agreement"] setting forth the terms of

Wolf's employment with ATC Corp. and due to expire on December 31, 2005 [Exhibit "A"].

4.     The Agreement was prepared by ATC Corp. and its attorneys.

5.     On September 28, 2005, by letter Wolf advised ATC Corp. that he would not

extend the expiration date of the Agreement.

6.  ATC Corp. by letter dated December 22, 2005 proposed, and Wolf agreed, that the term of the Agreement was extended but would expire on a date which was 90 days after notice was received from either party. [Exhibit "B"]

7.  In accordance with the December 22, 2005 Agreement, Wolf advised ATC Corp. on July 16, 2007 that he would not renew the employment Agreement and that the Agreement would expire on October 16, 2007. [Exhibit "C"]

8.  ATC Corp. thereafter merged with Defendant AVX Corporation, whose principal place of business is in Myrtle Beach, South Carolina.

9.  AVX Corporation requested a letter on October 15, 2007 from Plaintiff confirming that Plaintiff's employment would be over as of October 16, 2007 and Wolf complied. [Exhibit "D"]

10.  At the request of AVX Corporation Wolf extended his employment during a short transition period and his last day of actual employment was October 26, 2007.

11.  On November 6, 2007, Wolf received a letter from AVX Corporation counsel advising him that he was bound by the "no compete" clause and that AVX Corporation did not have to continue to pay his salary during the "no compete" period. [Exhibit E']

12.    The Agreement at Paragraph "9" provides that in order to hold Plaintiff to his non compete obligations, payment of Plaintiff's salary during the "non compete" period was required, provided, inter alia, that the Plaintiff did not resign during the term of the Agreement.

13.    The term of the Agreement expired on October 16, 2007 or before.

14.    Plaintiff worked for Defendant until at least the expiration of the term of the Agreement.

15.    AVX Corporation disputes this assertion and in addition has claimed a very expansive definition of Plaintiffs "non compete" obligations beyond that which is contained in the Agreement.

16.    Plaintiff has been unable to seek any employment based upon uncertain parameters of his "non compete" obligations and as to whether the "non compete" obligations are enforceable and, if enforceable, to what extent.

17.    On the basis of the above, a justiciable controversy exists which requires a declaration by this Court as to the parties various rights, obligations and remedies under the Agreement.

18.    Plaintiff has abided by the Defendants demand to refrain from "competing" with Defendant even though Defendant has not paid amounts due and even though Defendant's

claims of the "non compete" agreement are not clearly defined.

19.    As a result, the Plaintiff is unemployed and has lost income as a result of Defendants demand and failure to pay.

20.    If the Court finds that Plaintiff was entitled to be paid by AVX in order that AVX receive the benefit of the "non-compete" agreement, AVX by virtue of its demands and Plaintiff's compliance with the non competition agreement is obligated to pay Plaintiff.

21.    The Agreement provides that the laws of the State of New York govern and venue is placed in the Courts of the State of New York.

22.    Plaintiff has no adequate remedy at law.

## AS AND FOR A FIRST CAUSE OF ACTION

23.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs "1" through "22" above as though fully set forth at length herein.

24.    That Plaintiff is entitled to a judgment against Defendant declaring the following:

a.    that the non competition obligations are void since they are anti competitive, deprive Plaintiff of his ability to earn a living and/or

resulted from unequal bargaining power and/or present an unreasonable restraint on free labor.

b.      that the term of the Agreement expired on October 16, 2007 or earlier.

c.      that Plaintiff worked through the expiration of the term of the Agreement.

d.      that Plaintiff, as a condition of being bound by the non-compete clause, must be paid his salary as set forth in the Agreement.

e.      that since termination of employment Plaintiff has not competed.

f.      that Defendant is obligated to pay Plaintiff his salary having received demanded compliance with the non-competition Agreement and having received the benefits of the non compete Agreement.

g.      that Defendant's failure to pay Plaintiff's salary releases Plaintiff of obligations imposed by the non compete clause.

h.      that in the event that the non competition clause is enforceable, the terms of the non compete clause must be specifically defined and limited to defined and identified products and specific proprietary information and trade secrets.

## AS AND FOR A SECOND CAUSE OF ACTION

25.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs "1" through "22" and "24" above as though fully set forth at length herein.

26. In the event that the Court declares for Plaintiff as prayed for above in Paragraphs 1 b, c, d and f, a judgment against Defendant effectuating the above in the amounts due Plaintiff under the Agreement.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

1. On the First Cause of Action:

    a. that the non competition obligations are void since they are anti competitive, deprive Plaintiff of his ability to earn a living and/or resulted from unequal bargaining power and/or present an unreasonable restraint on free labor.

    b. that the term of the Agreement expired on October 16, 2007 or earlier.

    c. that Plaintiff worked through the expiration of the term of the Agreement.

    d. that Plaintiff, as a condition of being bound by the non-compete clause, must be paid his salary as set forth in the Agreement.

    e. that since termination of employment Plaintiff has not competed.

    f. that Defendant is obligated to pay Plaintiff his salary having received demanded compliance with the non-competition Agreement and having received the benefits of the non compete Agreement.

    g. that Defendant's failure to pay Plaintiff's salary releases Plaintiff of obligations imposed by the non compete clause.

    h. that in the event that the non competition clause is enforceable, the terms

of the non compete clause must be specifically defined and limited to defined and identified products and specific proprietary information and trade secrets.

2.    On the Second Cause of Action:

A judgment effectuating the Courts declaration.

3.    Such other and further relief as the Court deems just, proper and equitable.

Dated: January 9, 2008
New York, New York

By: Joel Bernstein, Esq.
Solomon & Bernstein
Attorneys for Plaintiff
351 Broadway, Third Floor
New York, New York 10013
(212) 545 - 8611

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------x

JUDAH WOLF,                                            **VERIFICATION**

                    Plaintiff,

       - against -                                Index No.:

AVX CORPORATION,

                   Defendant.

-------------------------------------------------------------------x

STATE OF NEW YORK    )
                    ss:
COUNTY OF NEW YORK  )

       Judah Wolf, being duly sworn, deposes and says:

       That I am the Plaintiff in the within action and I have read and know the contents of the foregoing Complaint and that I know the information contained therein to be true based upon personal knowledge of the same, except as to those matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

                               _____
                                    Judah Wolf

Sworn to before me this
day of January, 2008



_____
  Notary Public

Emily Ricciardelli

EMILY RICCIARDELLI
Notary Public, State of Florida
Commission# DD733938
My comm. expires Nov. 11, 2011

**Exhibit A**

<u>EMPLOYMENT AGREEMENT</u>

EMPLOYMENT AGREEMENT, dated as of December 31, 2001, between AMERICAN TECHNICAL CERAMICS CORP., a Delaware corporation having its principal place of business at One Norden Lane, Huntington Station, New York 11746 (the "Company"), and JUDAH WOLF, who resides at 4206 Laurel Oak Way, Ponte Vedra Beach, Florida 32082 ("Employee").

WITNESSETH:

WHEREAS, Employee is currently employed as the Senior Vice President – Thin Film Products of the Company pursuant to an employment agreement, dated January 1, 1998, which expires December 31, 2001;

WHEREAS, the Company desires to provide for Employee's continued performance of services for the Company and any present or future parent, subsidiary, or affiliate of the Company, and Employee desires to continue to perform such services, on the terms and conditions hereinafter set forth;

NOW, THEREFORE, in consideration of the other party's agreement to enter into this Agreement, the mutual promises contained herein and other good and valuable consideration, the receipt, adequacy, and sufficiency of which are hereby acknowledged, the Company and Employee hereby agree as follows:

1. <u>Term</u>. The Company agrees to employ Employee, and Employee agrees to serve as Senior Vice President - Thin Film Products of the Company, upon the terms and conditions hereinafter set forth, for a period commencing on January 1, 2002 and ending on December 31,

NYC 216301v5

2005, or for such shorter period as may be provided for herein; provided, however, that, on December 31, 2005, and on each December 31st thereafter, the period covered by this Agreement shall automatically be extended by one additional year unless at least 60 days prior to any such December 31st the Company shall deliver to Employee or Employee shall deliver to the Company written notice that the period covered by this Agreement will not be extended, in which case, this Agreement will terminate upon the expiration of the then existing term of this Agreement, including any previous extension. The period during which Employee is employed hereunder is hereinafter referred to as the "Employment Period."

      2.     Duties. Employee agrees to use his best efforts, skills, and abilities to perform faithfully all duties consistent with his position (or any other position of a similar nature) assigned to him from time to time by the Company in accordance with all Company policies and procedures and to devote his full business time, labor, energies, and attention to the performance of such duties. Employee shall not become involved in any personal investment or other matters which may detract from the performance of his duties or otherwise adversely affect the Company or any present or future parent, subsidiary, or affiliate of the Company. In the performance of his duties, Employee shall be subject to the direction of the Board of Directors, the Chief Executive Officer of the Company, and any officer of the Company designated by the Board or the Chief Executive Officer of the Company.

      3.     Place of Performance. In connection with his employment by the Company, Employee shall be based at the Company's offices in Jacksonville, Florida. Employee shall be available to travel at such times and to such places as may be necessary in connection with the performance of his duties hereunder.

4.    <u>Annual Compensation</u>.

(a)    <u>Salary</u>.  During the first year of the Employment Period, Employee shall receive a base salary at the annual rate of $125,000.  During each successive year of the Employment Period, Employee's base salary shall be increased by 8% over the annual rate in effect during the immediately preceding year.  For purposes of this Agreement, a "year of the Employment Period" shall be a period commencing on January 1st and ending on the next succeeding December 31st.  Employee's salary shall be payable in weekly installments or at such other frequency as the Company may from time to time determine (but not less frequently than monthly).

(b)    <u>Bonus</u>.  (i)  In addition to his base salary, during each year of the Employment Period, Employee shall be entitled to receive an annual incentive bonus (the "Thin Film Incentive") equal to 3% of the Thin Film Profit Contribution (as hereinafter defined) in respect of such year.  The Company shall pay quarterly estimates of the Thin Film Incentive to Employee as set forth herein.

(ii)  The Thin Film Incentive shall be calculated on a quarterly basis and bonus payments in respect thereof shall be made to Employee within 45 days after the end of the quarter to which such calculation relates.  In the event the Thin Film Profit Contribution calculated for any calendar quarter is less than zero, then no payment shall be made in respect of said quarter and the amount by which the Thin Film Profit Contribution is less than zero shall be carried forward to reduce the Thin Film Profit Contribution, if any, in the immediately succeeding calendar quarters in the same calendar year.  No such negative amount shall be carried forward beyond the end of the calendar year in which it is recorded.

(iii) As used herein, "Thin Film Profit Contribution" shall mean (A) net revenues received by the Company from the sale of products designated by the Company as "Thin Film Products," plus (B) an amount equal to 10% of the identifiable costs incurred by the Company's metalized substrates and circuits business which is under Employee's direction in connection with products provided or services performed by such business specifically and exclusively for other businesses and product lines of the Company other than Thin Film Products, the provision or performance of which has been specifically requested by the President of the Company, minus (without double counting) (C) identifiable costs directly attributable to the production, promotion, marketing, sale and administration of Thin Film Products, including, without limitation, (1) salary, bonuses and benefits and other costs for all direct and indirect personnel involved in the production, promotion, marketing, sale and administration of Thin Film Products, including Employee (but excluding Employee's Thin Film Incentive); (2) all materials and supplies, outside services, and maintenance and repair services relating to the production, promotion, marketing, sale and administration of Thin Film Products; (3) salary, bonuses, benefits and other costs for all internal sales personnel attributable to the sale of Thin Film Products; (4) outside sales representatives' commissions attributable to the sale of Thin Film Products; (5) departmental travel expenses; (6) advertising and promotion expenditures attributable to the marketing, promotion and sale of Thin Film Products; and (7) depreciation of assets used in the production, promotion, marketing and sale of Thin Film Products, and minus (D) an aliquot portion of all costs associated with the facilities in which the Company's metalized substrates and circuits businesses are located (considering the entire Jacksonville, Florida facility as one facility), based upon the square footage utilized by the Company's metalized substrates and circuits business at each such facility, including, without limitation, all

rental payments, utilities, real estate taxes, insurance, costs of maintenance and repairs, environmental costs. As of the date hereof, the products designated as "Thin Film Products" shall be as set forth on Exhibit A hereto.

(c)    Modified Officer's Bonus.    During the Employment Period, Employee shall also be entitled to receive ay incentive bonus to which Employee would otherwise be entitled as an officer of the Company under the Company's Officers' Bonus Plan, as same may be in effect from time to time, less an amount equal to 0.5% of the Thin Film Profit Contribution (if greater than zero) calculated for the period to which such officer's incentive bonus pertains. Employee hereby acknowledges that officers' bonuses are awarded in the sole discretion of the Board of Directors of the Company and are generally paid on a quarterly basis, if at all. Nothing contained herein shall require the Company to maintain the Officers' Bonus Plan.

(d)    Deductions.    The Company shall deduct from all amounts payable to Employee all taxes and other amounts which the Company is now or may hereafter become obligated to deduct under any applicable law.

5.    Benefits.    Employee shall be entitled to participate in such employee benefit plans established by the Company from time to time and generally made available to employees at levels similar to Employee's for which he meets the eligibility requirements. Nothing contained herein shall require the Company to establish or maintain any employee benefit plan.

6.    Termination.

(a)    Notwithstanding anything herein contained to the contrary, if on or after the date hereof and prior to the end of the Employment Period, (i) either (A) Employee shall be physically or mentally incapacitated or disabled or otherwise unable fully to discharge his

duties hereunder ("Disabled") for a period of 90 consecutive days or for an aggregate of 90 days within any period of twelve consecutive months, (B) Employee shall be convicted of a felony or other crime of moral turpitude, (C) Employee shall commit any act or omit to take any action in bad faith to the detriment of the Company or any present or future parent, subsidiary, or affiliate of the Company, (D) Employee shall willfully fail or refuse to perform any duties consistent with his position (or any other position of a similar nature) assigned to him from time to time, or (E) Employee shall breach any other term of this Agreement and fail to correct such breach within 10 days after receiving notice of the same, or if such breach is not capable of correction within such 10 day period, Employee shall fail to take substantial steps necessary to correct such breach within such 10 day period and shall not have corrected such breach within 30 days after receiving such notice, then, and in each such case, the Company shall have the right to give notice of termination of Employee's services hereunder as of a date to be specified in such notice, and this Agreement shall terminate on the date so specified, or (ii) Employee shall die, then this Agreement shall terminate on the date of Employee's death.

(b)    If this Agreement is terminated by the Company for any of the reasons set forth in Paragraph 6(a) hereof, or if Employee shall resign or otherwise voluntarily terminate his employment with the Company, Employee shall be entitled to receive only his salary at the rate provided in Paragraph 4(a) hereof through and including the date upon which termination shall take effect.

(c)    If Employee's employment by the Company pursuant to this Agreement is terminated by the Company for any reason other than any of the reasons set forth in Paragraph 6(a), or for no reason, then, provided Employee continues to abide by the provisions of Section 7, 8 and 9 of this Agreement, (i) the Company shall continue to pay to Employee, in

lieu of any other payments to which he would be entitled hereunder, his base salary at the rate and at the times provided in Section 4(a) hereof for until the earlier of (A) Employee's death, and (B) the date the term of this Agreement (as same previously may have been extended) was next scheduled to expire (assuming timely notice of non-renewal is given by the Company or Employee pursuant to Section 1 of this Agreement) but for such termination, and (ii) Employee shall be entitled to exercise all of his stock options that have vested on or prior to the date of termination for a period of one year after such termination, subject to the terms of the plan pursuant to which such options were granted and the stock option agreements evidencing same.

      7.    <u>Confidentiality</u>.

      (a)    Employee acknowledges and agrees that he has been and, during the Employment Period, will continue to be, privy to confidential proprietary and secret information relating to the Company, its present or future parents, subsidiaries and affiliates and their respective customers, clients and suppliers. Employee hereby agrees that, beginning on the date hereof, and at any time hereafter, Employee shall treat as strictly confidential any proprietary, confidential or secret information relating to the business or interests of the Company or any present or future parent, subsidiary or affiliate of the Company, or any customer, client or supplier of any of them, including, but without limitation, the organizational structure, operations, business plans or projects of the Company or any present or future parent, subsidiary or affiliate of the Company, or any customer, client or supplier of any of them, and any research datum or result, invention, trade secret, customer list or customer information, process or other work product developed by or for the Company or any present or future parent, subsidiary or affiliate of the Company, or any customer, client or supplier of any of them, whether on the premises of the Company or elsewhere ("Confidential Information"). Employee

hereby agrees that, beginning on the date hereof, and at any time hereafter, Employee shall not disclose to any person or entity, utilize for his own purposes or for the benefit of any other person or entity or make accessible to any person or entity, in any manner or in any form, any Confidential Information other than in connection with performing the services required of him under this Agreement, without the prior written consent of the Company.

(b)    Employee agrees that the provisions of this Paragraph 7 shall survive the termination of his employment and of this Agreement.

8.    Assignment of Intellectual Property Rights.

(a)    If at any time or times during his employment by the Company and during the six month period following his termination for any reason (or for no reason) Employee shall (either alone or with others) make, conceive, discover or reduce to practice any Intellectual Property (as hereinafter defined) whatsoever or any interest therein ("Intellectual Property Rights"), whether or not patentable or registrable under copyright or similar statutes or subject to analogous protection (herein called "Developments"), that (i) relates to the business of the Company or any present or future parent, subsidiary or affiliate of the Company or any of their respective customers, clients or suppliers or any of the products or services being developed, manufactured, sold or provided by any of them which may be used in connection therewith, (ii) results from tasks assigned to Employee by the Company or any present or future parent, subsidiary or affiliate of the Company, or (iii) results from the use of premises or personal property (whether tangible or intangible) owned, leased or contracted for by the Company or any present or future parent, subsidiary or affiliate of the Company, such Developments and the benefits thereof shall immediately become the sole and absolute property of the Company and its assigns, and Employee shall promptly disclose to the Company (or any

persons designated by it) each such Development and hereby assigns any rights Employee may have or acquire in the Developments and benefits and/or rights resulting therefrom to the Company and its assigns without further compensation and shall communicate, without cost or delay, and without publishing the same, all available information relating thereto (with all necessary plans and models) to the Company.  As used herein, the term "Intellectual Property" shall mean all industrial and intellectual property, including, without limitation, patents, patent applications, patent rights, trademarks, trademark applications, trade names, service marks, service mark applications, copyrights, copyright applications or registrations, databases, algorithms, computer programs and other software, know-how, trade secrets, proprietary processes and formulae, inventions, trade dress, logos, design and all documentation and media constituting, describing or relating to the above.

(b)    Upon disclosure of each Development to the Company, Employee will, during his employment and at any time thereafter, at the request and cost of the Company, sign, execute, make and do all such deeds, documents, acts and things as the Company and its duly authorized agents may reasonably require to (i) apply for, obtain and vest in the name of the Company alone (unless the Company otherwise directs) letters, patents, copyrights or other analogous protection in any country throughout the world and when so obtained or vested to renew and restore the same, (ii) defend any actions or opposition proceedings in respect of such applications and any opposition proceedings or petitions or applications for revocation of such letters, patents, copyrights or other analogous protection, and (iii) bring any action to enforce any rights in any Developments.

(c)    The Employee hereby irrevocably designates and appoints the Company and its duly authorized officers and agents as the Employee's agent and attorney-in-fact, to act

for and in the Employee's behalf and stead to execute and file any such application or applications and to do all other lawfully permitted acts to further the prosecution and issuance of any such letters, patents, copyrights and other analogous protection thereon with the same legal force and effect as if executed by Employee.

(d)    In the event of the termination of Employee's employment for any reason (or no reason), Employee agrees to deliver to the Company all documents, notes, drawings, blueprints, formulae, specifications, computer programs, data and other materials of any nature pertaining to any proprietary information or Intellectual Property of the Company or to Employee's work with the Company, and the Employee will not take any of the foregoing or any reproduction of any of the foregoing that is embodied in a tangible medium of expression.

(e)    The obligations of Employee pursuant to this Paragraph 8 shall survive termination of his employment and of this Agreement.

9.    <u>Non-Competition.</u>

(a)    Employee acknowledges that (i) in September 1993, the Company purchased from Miltech Corp., a corporation of which Employee was the principal stockholder, certain assets that were used by the Company to initiate its metalized substrates and ceramic business, and (ii) in August 1998, the Company purchased Employee's remaining inventory of ceramic substances.  Employee further acknowledges and agrees that (i) the retention of Confidential Information is essential to the continued existence of the Company, and that such information constitutes trade secrets, disclosure of which would irreparably harm the business of the Company, and (ii) the services to be furnished by Employee to the Company are of a special, unique, extraordinary and intellectual character which gives them unique and peculiar value to the Company.  Accordingly, Employee agrees that he will not during the period he is

employed by the Company or any present or future parent, subsidiary or affiliate of the Company, under this Agreement or otherwise, and, subject to the penultimate sentence of this Paragraph 9(a), during the Post-Employment Non-Compete Period (as hereinafter defined) (i) engage in, or otherwise directly or indirectly be employed by, or act as a consultant, advisor or lender to, or be a director, officer, employee, stockholder, owner, or partner of, any other Competitive Business (as hereinafter defined), or (ii) assist others in engaging in any Competitive Business.  In addition, Employee agrees that he will not during the period he is employed by the Company or any present or future parent, subsidiary or affiliate of the Company, under this Agreement or otherwise, and during the Post-Employment Non-Compete Period, (i) induce any employee of the Company or any present or future parent, subsidiary or affiliate of this Company to terminate his employment with the Company or such parent, subsidiary or affiliate, or engage in any Competitive Business, within a period of one year after such person is no longer employed by the Company or any present or future parent, subsidiary or affiliate of the Company, or (ii) induce any entity or person with which the Company or any of present or future parent, subsidiary or affiliate has a business relationship to terminate or alter such business relationship.  As used herein "Competitive Business" means and includes the business of designing, developing, manufacturing and marketing RF/Microwave/Millimeter/ Wave ceramic capacitors, thin film products and other passive components and any other business that provides services and/or products which are comparable to the services and/or products provided or contemplated to be provided by the Company or any present or future parent, subsidiary or affiliate of the Company; and "Post-Employment Non-Compete Period" means (i) in the case of the termination of Employee's employment with the Company upon expiration of the Employment Period, two years, and (ii) in the case of the termination of

Employee's employment with the Company prior to the scheduled expiration of the Employment Period, the period commencing on the date Employee's employment with the Company is terminated and ending on the later of (A) the date the Employment Period (as same previously may have been extended) was next scheduled to expire (assuming timely notice of non-renewal is given by the Company or Employee pursuant to Section 1 of this Agreement) but for such termination of employment, and (B) the second anniversary of such termination of employment. In the case of (i) the termination of Employee's employment with the Company upon expiration of the Employment Period, on (ii) the termination of Employee's employment with the Company for any other reason other than Employee's resignation or other voluntary termination of his employment or the termination by the Company of Employee's employment for any of the reasons specified in Paragraph 6(a)(i) hereof, Employee's obligations pursuant to the third sentence of this Paragraph 9(a) shall continue for only so long as the Company continues to pay to Employee his base salary at the rate in effect on the date his employment was so terminated in the installments and at the frequency that such payments were made at the time of such termination of employment. Payments made to Employee by the Company pursuant to Paragraph 6(c) of this Agreement shall also constitute payments for purposes of the immediately preceding sentence. Notwithstanding anything contained herein to the contrary, the provisions of this Paragraph 9 will not be deemed breached merely because Employee owns not more than 1% of the outstanding common stock of a corporation, if, at the time of its acquisition by Employee, such stock is listed on a national securities exchange, is reported on NASDAQ, or is regularly traded in the over-the-counter market by a member of a national securities exchange.

(b)    Employee understands that the foregoing restrictions may limit his ability to earn a livelihood in a business similar to that of the Company or any present or future parent, subsidiary or affiliate of the Company, but he nevertheless has received and will receive sufficient consideration (including, without limitation, the Company's agreement to enter into this Agreement) and other benefits as an employee of the Company and as otherwise provided hereunder to justify such restrictions which, in any event (given his education, skills and ability), Employee does not believe would prevent him from earning a livelihood.

(c)    The obligations of Employee pursuant to this Paragraph 9 shall survive the termination of his employment and of this Agreement.

10.    Scope of Agreement. Employee acknowledges that the restrictions contained in Paragraphs 7, 8 and 9 are a condition of his employment by the Company and constitute a material inducement to the Company's decision to enter into this Agreement. Employee further acknowledges that such restrictions are reasonable in view of the nature of the business in which the Company is engaged, the uniqueness of the services he is providing to the Company and his knowledge of the Company's business, and that any breach of his obligations under Paragraphs 7, 8 and 9 hereof will cause the Company irreparable harm for which the Company will have no adequate remedy at law. As a result, the Company shall be entitled to the issuance by a court of competent jurisdiction of an injunction, restraining order or other equitable relief in favor of itself restraining Employee from committing or continuing any such violation. Any right to obtain an injunction, restraining order or other equitable relief hereunder will not be deemed a waiver of any right to assert any other remedy the Company may have under this Agreement or otherwise at law or in equity.

11.    Representations and Warranties. Employee represents and warrants that the execution and delivery of this Agreement and the performance of all the terms of this Agreement do not and will not breach any agreement to which he is a party, including, without limitation, any agreement to keep in confidence proprietary information acquired by Employee in confidence or trust. Employee has not entered into and shall not enter into any agreement, either written or oral, in conflict with this Agreement. Employee further represents and warrants that he has not brought and will not bring with him to the Company or use at the Company any materials or documents of an employer or a former employer that are not generally available to the public, unless express written authorization from such employer for their possession and use has been obtained. Employee further understands that he is not to breach any obligation of confidentiality that he has to any employer or former employer and agrees to fulfill all such obligations during the period of his affiliation with the Company.

12.    Assignment. Under no circumstances shall Employee assign, pledge or otherwise dispose of any of his rights or obligations under this Agreement, and any such attempted assignment, pledge, or disposition shall be void and shall relieve the Company of all its obligations under this Agreement. The Company may assign any of its rights or obligations under this Agreement to any present or future parent, subsidiary, affiliate, or successor.

13.    Entire Agreement. This Agreement is the entire agreement between the Company and Employee with respect to the subject matter hereof and supersedes all other agreements, written or oral, concerning the subject matter hereof, including, without limitation, the Amended and Restated Employment Agreement, dated as of January 1, 1998, between the Company and Employee, which agreement is of no further force or effect.

14.    <u>Waivers and Further Agreements</u>  Any waiver of any breach of any terms or conditions of this Agreement shall not operate as a waiver of any other breach of such terms or conditions or any other term or condition, nor shall any failure to enforce any provision hereof on any one occasion operate as a waiver of such provision or of any other provision hereof or a waiver of the right to enforce such provision or any other provision on any subsequent occasion.

15.    <u>Amendments</u>.  This Agreement may not be amended, nor shall any waiver, change, modification, consent, or discharge be effected, except by an instrument in writing executed by or on behalf of the party against whom enforcement of any such amendment, waiver, change, modification, consent, or discharge is sought.

16.    <u>Severability</u>

(a)    If any provision of this Agreement shall be held or deemed to be invalid, inoperative, or unenforceable as written, it shall be construed, to the greatest extent possible, in a manner which shall render it valid and enforceable, and any limitation on the scope or duration of any such provision necessary to make it valid and enforceable shall be deemed to be part thereof.

(b)    If any provision of this Agreement shall be held or deemed to be invalid, inoperative, or unenforceable as applied to any particular case in any jurisdiction or jurisdictions, or in all jurisdictions or in all cases, because of the conflict or any provision with any constitution or statute or rule of public policy or for any other reason, such circumstance shall not have the effect of rendering the provision or provisions in question invalid, inoperative, or unenforceable in any other jurisdiction or in any other case or circumstance or of rendering any other provision or provisions herein contained invalid, inoperative, or

unenforceable to the extent that such other provisions are not themselves actually in conflict with such constitution, statute, or rule of public policy, but this Agreement shall be reformed and construed in any such jurisdiction or case as if such invalid, inoperative, or unenforceable provision had never been contained herein, and such provision reformed so that it would be valid, operative, and enforceable to the maximum extent permitted in such jurisdiction or in such case.

17.    <u>Governing Law</u>.  This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York, without giving effect to rules governing conflicts of law.

18.    <u>Courts</u>.  Any action to enforce any of the provisions of this Agreement shall be brought in the courts of the State of New York.  The parties hereby consent to the jurisdiction of the courts of the State of New York.

19.    <u>Notices</u>.  Any notices required or permitted by this Agreement shall be in writing and personally delivered or mailed by certified or registered mail, return receipt requested, addressed to the parties at their addresses set forth above, or to such other addresses as one party may specify to the other party, from time to time, in writing.  Any notice personally delivered shall be deemed given at the time of receipt thereof, and any notice given by certified or registered mail shall be deemed given at the time of certification or registration thereof.

20.    <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original but all of which together will constitute one and the same instrument.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date and year first above written.

AMERICAN TECHNICAL CERAMICS CORP.

By: _____

Victor Insetta, President and
Chief Executive Officer

_____   3/19/02

Judah Wolf

**Exhibit B**



american
technical
ceramics

December 22, 2005

Mr. Judah Wolf
4206 Laurel Oak Way
Ponte Vedra Beach, Florida 32082

Dear Judah:

The Compensation Committee has considered your proposal as set forth in your letter, dated September 28, 2005, and proposes the following in response:

1.    The "Employment Period" as defined in the Employment Agreement, dated as of December 31, 2001, between you and ATC (the "Agreement") will be extended beyond the scheduled expiration date of December 31, 2005 until either party gives written notice to the other of his or its election to terminate. Notice of an election to terminate must be given at least 90 days in advance of the scheduled termination date.

2.    The current terms of your employment as provided in the Agreement shall continue.

3.    As modified by this letter, the Agreement shall remain in full force and effect.

If you are in agreement with the foregoing, please sign the two copies of this letter in the space provided below and return them to me.

Please call me if you have any questions.

Very truly yours,

Kathleen M. Kelly
Vice President - Administration

ACCEPTED AND AGREED TO:

Judah Wolf

**Exhibit C**

July 16, 2007

Kathleen Kelly
Vice President
American Technical Ceramics Corp
One Norden Lane
Huntington Station, NY 11746

Dear Kathy

In accordance with the provision of my current employment agreement with ATC, I hereby give notice that I do not intend to continue my employment at ATC under the terms of that agreement and let it expire on October 16, 2007.

My intention is to have a new agreement negotiated with the buyer of ATC prior to September 16, 2007, which will facilitate my continuous employment at ATC.

Sincerely Yours

Judah Wolf

4206 Laurel Oak Way

Ponte Vedra Beach, FL 32082

**Exhibit D**

October 15, 2007


To:   John Lawing
      Vice President
      AVX Corporation

From:  Judah Wolf


I am hereby giving notice of my resignation from my position in ATC/AVX  effective on
October 26,2007.

I request that you will state AVX's position in reference to my "no compete" obligation,
as detailed in my employment agreement with ATC, which will expire on October 16,
2007.

I would like to take this opportunity to let you know that I have enjoyed working with
you for the brief period since the announcement of the merger.



Respectfully yours

Judah Wolf




CC:  Kathy Kelly

# Exhibit E

# /AV/X CORPORATION
### A KYOCERA GROUP COMPANY

AVX Corporation
P.O. Box 867
Myrtle Beach, SC 29578-0867
Tel: (843) 448-9411

November 6, 2007

By Federal Express and Certified Mail

Judah Wolf
4206 Laurel Oak Way
Ponte Vedra Beach, FL 32087

  Re: *Resignation*

Dear Mr. Wolf:

  I have been informed that you have resigned from your position at ATC. I am sorry to hear of your decision. In connection with this resignation, I must remind you of several obligations that continue past your last day.

  I would like to focus on two central points. First, you are obliged to maintain the confidentiality of all corporate information, including sales plans, customer lists, specifications, internal know-how, and the like. It is our view that, in the event you obtain employment with any entity that competes to any degree with ATC, is a supplier or potential supplier of ATC, or is a customer or potential customer of ATC, it is preferable if ATC/AVX work out ahead of time a mechanism to make sure that this confidentiality obligation is maintained. Should you fail to do so, we reserve the right to contact your employer directly to raise our concerns. Please note that AVX/ATC takes this obligation very seriously and will pursue all legal avenues to ensure this contractual obligation is strictly complied with.

  Second, you are subject to a two-year non-competition obligation. Under the contract, your resignation obviates any obligation by ATC/AVX to continue to pay your salary for the next two years in order for the non-competition obligations to continue. Accordingly, you must abide by these provisions. Again, AVX/ATC takes this obligation seriously and will enforce it. You should, of course, consult with your own counsel to get legal advice, but AVX/ATC takes the position that any violation will constitute the basis for injunctive relief against you and any putative employer as well as a claim for legal damages. If you have any questions or doubts concerning whether an activity will violate such clause, we will be happy to review such activity beforehand to give you our views.

  In light of the importance of the foregoing obligations, I request a confirmation of your intent to abide by them in writing or by email by close of business Friday, November 9. Should there be a disagreement, or should you fail to respond, or should

you fail in your undisputed obligations, ATC/AVX reserves the right to seek immediate relief in court.

PLEASE NOTE THAT FAILURE TO TIMELY RESPOND TO THIS LETTER MAY HAVE LEGAL IMPLICATIONS. PLEASE CONSULT WITH A LAWYER AT YOUR EARLIEST CONVENIENCE. TO THE EXTENT NECESSARY AND APPROPRIATE, THIS LETTER CONSTITUTES A FORMAL DEMAND FOR PERFORMANCE.

I look forward to hearing from you.

Sincerely,

Evan Slavitt
Vice President for Business and
Legal Affairs
eslavitt@avxus.com