Jennifer B. Rubin (JR 3321)
e-mail: jbrubin@mintz.com
Michael S. Arnold (MA 8541)
e-mail: msarnold@mintz.com
MINTZ, LEVIN, COHN, FERRIS,
 GLOVSKY & POPEO, P.C.
Chrysler Center
666 Third Avenue,
New York, New York 10017
Tel:    (212) 935-3000
Fax:   (212) 983-3115

*Attorneys for Defendant AVX Corporation*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

JUDAH WOLF,

                    Plaintiff,

         -against-

AVX CORPORATION,

                    Defendant.

-------------------------------------------------------------x

Index No. 08 Civ. 934 (WHP)

**DEFENDANT AVX CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER VENUE**

Defendant AVX Corporation ("AVX") submits this Memorandum and the accompanying Declaration of Evan Slavitt in support of its motion to dismiss Plaintiff Judah Wolf's ("Plaintiff") Verified Complaint, dated January 9, 2008 ("Complaint"), pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. §§ 1391(a) and 1406(a), or, in the alternative, to transfer the action pursuant to 28 U.S.C. §§ 1406(a) or 1404(a), to the Middle District of Florida.

## PRELIMINARY STATEMENT

This case does not belong in the Southern District of New York. Mr. Wolf not only *could* have filed his complaint in the Middle District of Florida, he *should* have filed his Complaint there.

Mr. Wolf, a Florida resident, was employed pursuant to a written employment agreement with American Technical Ceramics Corp. ("ATC"), at ATC's Jacksonville, Florida facility. AVX has no connection to New York nor do the majority of witnesses in this action. The action did not arise in New York and does not relate to New York in any manner. As a result, this Court should dismiss Mr. Wolf's Complaint given the lack of appropriate venue. Alternatively, this Court should transfer this action to the Middle District of Florida, a more convenient district for the parties and witnesses and because it would be in the interests of justice to transfer this matter there.

## STATEMENT OF FACTS

AVX is a Delaware corporation with a principal place of business in Myrtle Beach, South Carolina (Declaration of Evan Slavitt in Support of Motion to Dismiss or Transfer, dated March 24, 2008 ("Slavitt Decl."), ¶2). AVX manufactures and supplies electronic components (*Id.*). AVX does not now maintain and has not maintained offices in New York for many years (*Id.*). AVX's only connection to New York is that some of its products may be sold here and that it has a facility in the Western District of New York in Olean, Cattaraugus County, New York (*Id.*). In

1

September 2007, a subsidiary of AVX merged with ATC (the "Merger") (*Id.* ¶3). AVX and ATC continue to operate as distinct corporate entities after the Merger (*Id.*).

Mr. Wolf was an ATC employee at its Jacksonville facility at the time of the Merger (*Id.* ¶4). He never worked at ATC's New York facility before or after the Merger (*Id.*). Mr. Wolf was employed pursuant to an employment agreement with ATC, dated December 31, 2005 (the "Employment Agreement", which is attached as Exhibit A to the Complaint. The Complaint is attached as Exhibit 1 to the Slavitt Decl.). The Employment Agreement includes a New York forum selection clause (Slavitt Decl., Ex. 1 (Complaint, Ex. A (Employment Agreement, §18)). AVX did not assume the obligations of ATC's agreements with its employees, including the Employment Agreement, after the Merger (Slavitt Decl., ¶5). AVX has never agreed to litigate any disputes with Mr. Wolf in New York pursuant to the Employment Agreement or any other Agreement (*Id.* ¶6).

After Mr. Wolf resigned from ATC, he filed a Complaint in New York State court regarding claims concerning the Employment Agreement. AVX removed this action to this Court shortly thereafter, pursuant to 28 U.S.C. §§ 1441 and 1446. At issue in the action is a dispute regarding the expiration of Mr. Wolf's contract terms, his actions concerning his resignation, the alleged unreasonableness of the post-employment restrictions, and whether Mr. Wolf is adequately mitigating his damages. Most of the operative facts relating to these issues occurred in or near Jacksonville, Florida, or Myrtle Beach, South Carolina (*Id.* ¶13). Discovery in this case will center upon these issues, and will require testimony of several witnesses. The witnesses associated with his resignation generally reside either in Florida or in Myrtle Beach, South Carolina (*Id.* ¶8). Only one witness resides in New York, Kathleen Kelly, and she is willing to travel to Florida for discovery purposes and, if necessary, trial (*Id.* ¶9). Mr. Slavitt

will be a witness regarding Mr. Wolf's resignation and the effect of his resignation on his non-compete obligations to ATC (*Id.*). He will also be a witness regarding AVX's policies and procedures and the necessity of enforcing the non-compete agreement to protect ATC's legitimate business interests (*Id.*). Mr. Slavitt lives and works in Myrtle Beach, South Carolina, but he is willing to make the short trip to Jacksonville for purposes of litigating this matter (*Id.*).

In addition, Pam Reese, the human resources representative for ATC's Jacksonville facility, will testify regarding the facts and circumstances concerning Mr. Wolf's resignation, ATC's policies and procedures, and the necessity of enforcing the non-compete agreement to protect ATC's legitimate business interests (*Id.* ¶10). Other witnesses will likely be other employees at ATC's Jacksonville facility who may have knowledge regarding the facts and circumstances of Mr. Wolf's resignation (*Id.* ¶11). Mr. Wolf of course will be a key witness, and he resides in the Jacksonville area (*Id.* ¶12, Ex. 1 (Complaint, ¶1).

## ARGUMENT

### I.

### THIS ACTION SHOULD BE DISMISSED BECAUSE NEW YORK IS AN IMPROPER VENUE

Parties are required to litigate in the proper venue to protect "a defendant from the inconvenience of having to defend an action in a trial that is either remote from the defendant's residence or from the place where the acts underlying the controversy occurred." *Leon C. Baker, P.C. v. Bennett*, 942 F. Supp. 171, 175 (S.D.N.Y. 1996). It is for that reason that Federal law requires a "district court of a district in which the case is laying venue in the wrong division or district [to] dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

Where a defendant challenges venue, the "burden rests with the plaintiff to show that the chosen forum is proper." *Blum v. Salomon*, 06 Civ. 3149, 2006 WL 3851157, at *2 (S.D.N.Y. Dec. 28, 2006) (Pauley, J.) (citing *E.P.A. ex rel. McKeown v. Port Authority*, 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001) (Pauley, J)). To demonstrate a proper forum in diversity actions, a party must demonstrate the action belongs in the District based on one of section 1391(a)'s venue requirements: (1) the district where any defendant resides, if all defendants reside in the same state; (2) the district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject of the action is situated; or (3) a district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought. 29 U.S.C. § 1391(a).

In analyzing venue under § 1391(a)(2), the Court will first identify "the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims" and then determine "whether a substantial part of those acts or omissions occurred in the district where suit was filed, that is, whether 'significant events or omissions material to [those] claim[s] ... have occurred in the district in question." *Blum*, 2006 WL 3851157, at *2 (quoting *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005)).

In deciding a motion to dismiss on the basis of improper venue, a court may consider extrinsic evidence that contradicts the allegations in a complaint. *See E.P.A. ex rel. McKeown*, 162 F. Supp. 2d at 183. "When an allegation is so challenged, a court may examine facts outside the complaint to determine whether venue is proper." *Id.* If the Court determines that a party's chosen forum is improper, it has the discretion to either dismiss the action or, as discussed in Point II below, transfer the case to a court where venue is proper. 28 U.S.C. § 1406(a); *Blum*,

2006 WL 3851157, at *2.

Mr. Wolf cannot satisfy any of the § 1391 factors. AVX is not a resident of New York (Slavitt Decl., ¶12, Ex. 1 (Complaint, ¶1)). Mr. Wolf also cannot demonstrate that a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of New York. In fact, no acts or omissions took place in the Southern District of New York in relation to his claims. *Gurtu v. Northgate Tenants Corp.*, 06 Civ. 14255, 2006 WL 3634839, at *2 (S.D.N.Y. Dec. 13, 2006) (Pauley, J) (finding venue improper where all events took place in New Jersey and Complaint failed to assert one fact regarding events taking place in the Southern District of New York). Most of the operative events took place in Florida and South Carolina (Slavitt Decl., ¶13).

Lastly, Mr. Wolf cannot demonstrate that "there is no [other] district in which the action may otherwise be brought." Mr. Wolf has indicated that the forum selection clause in his Employment Agreement dictates that the action be filed in a New York state court. AVX is not a party to the Employment Agreement and has never agreed to litigate disputes in this State (*Id.* ¶¶5-6). Moreover, the provision may not be read restrictively as the waiver of the right to invoke Federal jurisdiction. In either event, AVX did not commit itself to a New York forum and did not waive the right to Federal adjudication of its claims. *See ZPC 2000, Inc. v. The SCA Group, Inc.*, 86 F. Supp. 2d 274, 277 (S.D.N.Y. 2000) (forum selection clause not enforced where there was no evidence the parties agreed to forum selection clause).

This dispute remains between a resident of Florida, and AVX, a Delaware corporation doing business from Myrtle Beach, South Carolina. The factual disputes in this lawsuit relate to acts and omissions in South Carolina and Florida, not in New York. As a result, this Court should dismiss Plaintiff's Complaint.

## II.

## IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER THE ACTION, PURSUANT TO § 1406(a) OR § 1404(a), TO A MORE CONVENIENT FORUM AND IN THE INTEREST OF JUSTICE

If the Court declines to dismiss the Complaint although venue is improper, it retains the discretion to transfer the action to a more suitable district if such a transfer would serve the interests of justice. 28 U.S.C. § 1406(a). Similarly, if for some reason the Court finds venue proper – which it should not – Section 1404(a) permits the Court to transfer the action to another district where it might originally have been brought for the convenience of the parties and witnesses, and in the interest of justice. 28 U.S.C. § 1404(a);[1] *Blum*, 2006 WL 3851157, at *2 (citing *Flowserve Corp. v. BMCE, Inc.*, 05 Civ. 8075, 2006 WL 2927176 (S.D.N.Y. Oct. 12, 2006) (Pauley, J.)). The Court has "considerable discretion" in deciding whether to transfer venue. *Bionx Implants, Inc. v. Biomet, Inc.* 99 Civ. 0740, 1999 WL 342306, at *3 (S.D.N.Y. May 27, 1999) (Pauley, J). This Court should exercise its discretion to transfer this action because the Middle District of Florida is the most appropriate forum in which to litigate this dispute.

Although sections 1404(a) and 1406(a) "apply under slight different circumstances, they employ the same 'interest of justice' analysis." *ZPC 2000, Inc.*, 86 F. Supp. 2d at 279 n. 8. In either case, the Court asks "whether the transfer would promote the interests of justice and the convenience of the parties" and in doing so it considers "several factors, including: (1) the place where the operative facts occurred; (2) the convenience of the parties; (3) the convenience of the

---

[1] The purpose of Section 1404(a) is to "prevent the waste of 'time, energy and money' and to 'protect litigants, witnesses and the public interest against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612 (1964) (quoting *Grain Co. v. Barge*, 364 U.S. 19, 26-27 (1960)); see also *Mastercard Int'l Inc. v. Lexcel Solutions, Inc.*, 03 Civ. 7157, 2004 WL 1368299, at *6 (S.D.N.Y. Jun. 16, 2004) (Pauley, J.).

witnesses; (4) the relative ease of access of proof; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the plaintiff's choice of forum; (7) the forum's familiarity with the governing law; and (8) trial efficiency and the interests of justice." *Blum*, 2006 WL 3851157, at *2; *Mastercard Int'l Inc. v. Lexcel Solutions, Inc.*, 03 Civ. 7157, 2004 WL 1368299, at *6 (S.D.N.Y. Jun. 16, 2004) (Pauley, J.). No one factor is determinative and the Court will make its determination on a case-by-case basis. *Id.*

Apart from Plaintiff's choice of forum, which as explained below, should be afforded little deference in this instance, the other factors favor a transfer of this action to the Middle District of Florida. First, this court looks to the site of events from which the claim arises. *Blum*, 2006 WL 3851157, at *2 (citing *Transatlantic Reinsurance Co. v. Cont'l Ins. Co.*, 03 Civ. 3227, 2003 WL 22743829, at *5 (S.D.N.Y. Nov. 20, 2003). The core of operative facts here occurred in Florida and South Carolina (Slavitt Decl., ¶13).

Second, the Middle District of Florida is a more convenient forum for the parties to litigate this case. Mr. Wolf resides there (*Id.* ¶12, Ex. 1 (Complaint, ¶1)). AVX is located nearby in Myrtle Beach, South Carolina (*Id.* ¶2). Mr. Slavitt, AVX's Vice President for Legal and Business Affairs, will be a witness regarding Mr. Wolf's resignation and the effect of his resignation on his non-compete obligations to ATC (*Id.* ¶¶1, 9). He will also be a witness regarding AVX's policies and procedures and the necessity of enforcing the non-compete agreement to protect ATC's legitimate business interests (*Id.* ¶9). Mr. Slavitt lives and work in Myrtle Beach, South Carolina but he is willing to make the short trip to Jacksonville for purposes of litigating this matter (*Id.*).

The Middle District of Florida is also a more convenient location for the witnesses. Pam Reese, the human resources representative for ATC's Jacksonville facility, will testify regarding the facts and circumstances concerning Mr. Wolf's resignation, ATC's policies and procedures, and the necessity of enforcing the non-compete agreement to protect ATC's legitimate business interests (*Id.* ¶10). Other witnesses include employees at ATC's Jacksonville facility who may have knowledge regarding the facts and circumstances of Mr. Wolf's resignation (*Id.* ¶11). Mr. Wolf of course will be a key witness, and he resides in Florida (*Id.* ¶12, Ex. 1 (Complaint, ¶1)). And Kathleen Kelly, the ATC employee based in New York, has agreed to travel to Florida for discovery and trial purposes (*Id.* ¶9).[2]

As to a Florida Federal Judge's ability to apply New York law, it is well established that "'Federal courts are deemed capable of applying the substantive law of other states,'" especially in breach of contract action[s]." *Flowserve Corp.*, 2006 WL 2927176, at *6 (citations omitted). And the fact that Mr. Wolf is foreign to New York lessens any deference a court may show to his choice of forum. *Royal Bank of Canada v. Hang Lung Bank Ltd.*, 1991 WL 198664, at *2 (S.D.N.Y. Sept. 25, 1991); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981). In this instance, that deference should be disregarded altogether because the only connection this action has to the Southern District of New York appears to be that Mr. Wolf's attorney practices here; that fact cannot overcome all of the other facts supporting a transfer to Florida. *See Executone Information Sys., Inc. v. BDO Seidman*, 92 Civ. 4013, 1993 WL 37111, at *2

---

[2] At this stage in the litigation, the parties have not conducted discovery and it is uncertain as to the where many of the documents relevant to this action will be found. Regardless, "'in today's era of photocopying, fax machines and Federal Express,' the location of documents is a neutral factor." *Flowserve*, 2006 WL 2927176, at *4 (quoting *Coker v. Bank of Am.*, 984 F. Supp. 757, 766 (S.D.N.Y. 1997)).

8

(S.D.N.Y. Feb. 9, 1993) (rejecting plaintiff's argument in opposition to motion to transfer primarily that its outside counsel and some in-house counsel were located in New York).[3]

Analyzing all of these factors, it becomes obvious that litigating this action in the Middle District of Florida is more convenient and less expensive for all parties involved. Accordingly, if the Court opts not to dismiss, it should transfer the action to the Middle District of Florida pursuant to 28 U.S.C. §§ 1406(a) or 1404(a).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint entirely or transfer this action to Middle District of Florida.

Dated: March 24, 2008
    New York, New York

Respectfully submitted,

By: _____
Jennifer B. Rubin (JR 3321)
e-mail: jbrubin@mintz.com
Michael S. Arnold, Esq. (MA 8541)
e-mail: msarnold@mintz.com
MINTZ, LEVIN, COHN, FERRIS,
  GLOVSKY & POPEO, P.C.
Chrysler Center
666 Third Avenue
New York, NY 10017
Tel:   (212) 935-3000
Fax:   (212) 983-3115

*Attorneys for Defendant AVX Corporation*

---

[3] The Court should also note that docket congestion suggests that Florida would be a more appropriate forum. In the 12-month period ending September 30, 2007, approximately 17,699 cases were filed in the Southern District of New York compared to 14,125 cases in the Middle District of Florida. Among the cases that went to trial, the median time interval in the Southern District of New York was 25.6 months. *See* Federal Court Management Statistics, http://www.uscourts.gov/cgi-bin/cmsd2007.pl (Mar. 24, 2008).

4278712v.1                              9