UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

JUDAH WOLF,

                      Plaintiff,

          - against -

AVX CORPORATION,

                     Defendant.

-------------------------------------------------------------------x

STATE OF NEW YORK   )
                     ) ss
COUNTY OF NEW YORK  )

Index No. 08 Civ. 934 (WHP)

**DECLARATION OF JUDAH WOLF IN OPPOSITION TO MOTION TO DISMISS OR TRANSFER**

Judah Wolf, under penalties of perjury pursuant to 28 U.S.C. § 1746, hereby declares as follows:

1.     I am the Plaintiff in the action referenced above. I submit this Declaration in opposition to the motion of AVX Corporation for dismissal or alternatively for transfer. I am personally familiar with the facts recited in this Declaration.

2.     This action involves a claim of breach of an Employment Agreement ["Agreement"] between myself as the Employee and American Technical Ceramics Corporation ["ATC"] as Employer, and a declaration of rights and responsibilities in regard to the Agreement. The action is based upon contract interpretation under New York law, and the authenticity of the documents is not in dispute.

3.     Defendant's motion is supported solely by the Declaration of Evan Slavitt. The declaration of Mr. Slavitt is more interesting for what he fails to disclose then what he states. Mr.

Slavitt states that he is the Vice President of legal affairs for AVX, that AVX and ATC are separate entities, and that AVX did not execute nor is it a party to the Agreement and did not assume the obligations of its wholly owned subsidiary. The relationship between AVX and ATC is explained simply as a merger between a subsidiary of AVX and ATC. What Mr. Slavitt fails to mention, is that he is a Director, Vice President, and Secretary of ATC, as confirmed by his SEC form 4 filing [a copy of which is annexed as Exhibit "A"] and that ATC is wholly owned and controlled by AVX.

4.    AVX is the beneficial owner of all shares (except for 1,000 shares) in ATC as confirmed by AVX's SEC filing, a copy of which is annexed hereto as Exhibit "B".

5.    After the merger, I no longer reported to Victor Insetta, who was the President of ATC, but to the Vice President at AVX by the name of John Lawing, part of the Advanced Products Group of AVX. A copy of AVX's press release, part of a required public filing by AVX maintained on the federal government's website, is annexed as Exhibit "C". The earnings of ATC are reported on the consolidated balance sheet of AVX and AVX has paid ATC's debts. Exhibit "D".

6.    Notice of contract expiration was given to Kathleen M. Kelly at the principal executive office of ATC which is located in Huntington Station in New York on Long Island. Therefore, the operative events: the Agreement and Notice of Expiration took place in New York. Nothing occurred in South Carolina other than Mr. Slavitt's posting of his letter on AVX stationary. Ms. Kelly is the Vice President of ATC and is, and has been, employed at the ATC

offices in New York for the entire period of my employment with ATC. Ms. Kelly is the only person I had contact with and the only person who has any personal knowledge. Mr. Slavitt opines that Ms. Kelly will gladly travel to Florida while at the same time glossing over the fact that she works on Long Island. Mr. Slavitt goes on to state that the only facility owned by AVX in New York State is in Western New York. However, Mr. Slavitt again fails to mention that ATC, its wholly owned subsidiary, is located on Long Island at the same address as recited in the original contract [Exhibit "E"].

7.     I do not believe that Mr. Slavitt has any personal knowledge of the facts since the ninety (90) day notice of expiration given to ATC preceded the merger. The first and only contact I had with Evan Slavitt was receipt of his letter annexed as Exhibit "F". Mr. Slavitt's only personal knowledge would be that he wrote the letter, which speaks for itself. I don't believe that his testimony is in any way relevant, since the issue is a matter of documentary proof, based upon the contract and the letter I sent to Ms. Kelly giving ninety (90) days' notice of the date that the Employment Agreement would expire. Ms. Kelly was the person who asked me to send a letter on October 15, 2007 to Mr. Lawing at AVX.

8.     Certainly, Mr. Slavitt's current posture that "these are distinct entities," meaning AVX and ATC, is belied by his own letter. First of all, the letter is written by Mr. Slavitt as an officer of AVX, not as an officer of ATC, and using AVX letterhead. Mr. Slavitt's letter repeatedly refers to "AVX/ATC" as if they are one entity or one and the same, which for all real purposes they are. It cannot be disputed that AVX determined that I should not be paid what was due to me pursuant to the Agreement with its wholly owned subsidiary. Morever, Mr. Slavitt asserts rights in

regard to AVX in enforcing the non competition obligations of the Agreement. Filings with the government confirm that AVX is the beneficial owner of ATC and undeniably fully controls ATC through AVX personnel.

9.    It seems common sense that you cannot enjoy the benefits of an agreement without the obligations. If Mr. Slavitt is correct in his implicit assertion that AVX is not a party to the Agreement, and therefore has no obligations under the Agreement, the action should be dismissed rather than transferred. However, it it is AVX's position that it is actually defending its wholly owned subsidiary, it should remain in New York.

10.    The issue of AVX policy is irrelevant since AVX, according to Mr. Slavitt, is not a party to the Agreement. The policy of ATC, to the extent relevant, can be testified to by Ms. Kelly. All of the persons mentioned by Mr. Slavitt, including the unnamed witnesses, are either employees of AVX or employees of AVX's wholly owned subsidiary, ATC and their knowledge gained from hearsay. The proposed testimony is cumulative since, if testimony is needed, Ms. Kelly can cover each of the areas mentioned. Mr. Slavitt does not describe any of the "facts" in regard to the Agreement or its expiration, which AVX will need to present, nor the "facts" known by these "witnesses" or the source of their knowledge of these "facts."

11.    The Employment Agreement contains both a mandatory choice of law clause [New York State Law] and a mandatory forum selection clause [New York State Courts]. These clauses and the Employment Agreement were prepared by ATC and drafted by the attorneys representing AVX.

12.    The Employment Agreement [a copy of which is annexed to the Complaint] states as follows:

"17.    <u>Governing Law</u>. This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York, without giving effect to rules governing conflicts of law.

18.    <u>Courts</u>. Any action to enforce any of the provisions of this Agreement shall be brought in the courts of the State of New York. The parties hereby consent to the jurisdiction of the courts of the State of New York."

13.    The application of these clauses to the Employment Agreement is mandatory ["shall be governed"; "shall be brought"].

14.    There are no exceptional facts or circumstances recited by Mr. Slavitt. ATC drafted these clauses, and consequently neither ATC nor its owner, AVX, can claim that they are unjust or unreasonable or that the clauses were obtained through fraud or overreaching.

15.    The drafter is conclusively presumed to know the contents of the Employment Agreement and have consented to its terms. Certainly AVX was aware of the Agreement when it acquired all of the shares of ATC.

16.    Defendant does not state that it will be deprived of a remedy nor do these clauses contravene a strong public policy of New York State. Plaintiff's choice of forum was not inappropriate. It is required by the Employment Agreement. As the entity which owns and controls ATC, AVX is the real party in interest.

17.    Transfer is inappropriate since the action, in regard to the contract, could not be initially brought in Florida. It is true that I reside in Florida and that I resided in Florida and would be employed at a Florida facility when I entered into the Employment Agreement. This fact was clearly known when the Employment Agreement was drafted.

18.    Furthermore, the central issue, whether Plaintiff or Defendant exercising its control over ATC, breached the Employment Agreement, can be disposed of as a matter of law based upon documents already before the Court. All of the essential documents [the authenticity of which has never been questioned] are annexed to the complaint as exhibits.

19.    I am not complaining about traveling to New York, and the only person with personal knowledge, Ms. Kelly, is in New York.

Wherefore it is respectfully requested that the motion by AVX be denied in all respects.

Dated:  March 28, 2008

_____
Judah Wolf

# Exhibit A

SEC Form 3

**FORM 3**

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

### INITIAL STATEMENT OF BENEFICIAL OWNERSHIP OF SECURITIES

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0104 |
| Expires: | February 28, 2011 |
| Estimated average burden hours per response | 0.5 |

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

| 1. Name and Address of Reporting Person* <br><br> Slavitt Evan M <br><br> (Last)   (First)   (Middle) <br> C/O AVX CORPORATION <br> 801 17TH AVENUE SOUTH <br><br> (Street) <br> MYRTLE BEACH   SC   29577 <br><br> (City)   (State)   (Zip) | 2. Date of Event Requiring Statement (Month/Day/Year) <br> 09/25/2007 | 3. Issuer Name and Ticker or Trading Symbol <br> AMERICAN TECHNICAL CERAMICS CORP <br> [ AMK ] |
|---|---|---|
| | | 4. Relationship of Reporting Person(s) to Issuer (Check all applicable) <br><br> X Director      10% Owner <br> X Officer (give title below)   Other (specify below) <br> Vice President and Secretary | 5. If Amendment, Date of Original Filed (Month/Day/Year) <br><br> 6. Individual or Joint/Group Filing (Check Applicable Line) <br> X Form filed by One Reporting Person <br> Form filed by More than One Reporting Person |

**Table I - Non-Derivative Securities Beneficially Owned**

| 1. Title of Security (Instr. 4) | 2. Amount of Securities Beneficially Owned (Instr. 4) | 3. Ownership Form: Direct (D) or Indirect (I) (Instr. 5) | 4. Nature of Indirect Beneficial Ownership (Instr. 5) |
|---|---|---|---|
| | | | |

**Table II - Derivative Securities Beneficially Owned**
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 4) | 2. Date Exercisable and Expiration Date (Month/Day/Year) | | 3. Title and Amount of Securities Underlying Derivative Security (Instr. 4) | | 4. Conversion or Exercise Price of Derivative Security | 5. Ownership Form: Direct (D) or Indirect (I) (Instr. 5) | 6. Nature of Indirect Beneficial Ownership (Instr. 5) |
|---|---|---|---|---|---|---|---|
| | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | |
| | | | | | | | |

Explanation of Responses:

No securities are beneficially owned.

Kurt P. Cummings, Attorney in Fact for: Evan Slavitt
** Signature of Reporting Person

09/25/2007
Date

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, *see* Instruction 5 (b)(v).

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.**

# Exhibit B

SEC Form 4

**FORM 4**

UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. See Instruction 1(b). ☐

**STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP**

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

OMB APPROVAL

OMB Number: 3235-0287
Expires: February 28, 2011
Estimated average burden hours per response: 0.5

| 1. Name and Address of Reporting Person* | 2. Issuer Name **and** Ticker or Trading Symbol | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|
| AVX CORP | AMERICAN TECHNICAL CERAMICS CORP [ AMK ] | Director ___  10% Owner X |
| (Last)  (First)  (Middle) | 3. Date of Earliest Transaction (Month/Day/Year) | Officer (give title below) ___  Other (specify below) ___ |
| 801 17TH AVE SOUTH  PO BOX 867 | 09/25/2007 | |
| (Street)  MYRTLE BEACH  SC  29577 | 4. If Amendment, Date of Original Filed (Month/Day/Year) | 6. Individual or Joint/Group Filing (Check Applicable Line) |
| (City)  (State)  (Zip) | | X  Form filed by One Reporting Person  ___ Form filed by More than One Reporting Person |

**Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned**

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 09/25/2007 | | P | | 9,032,803 | A | $24.75 | 1,000 (1) | D | |

**Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned**
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Securities Underlying Derivative Security (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |

**Explanation of Responses:**

1. All of American Technical Ceramics Corp.s outstanding common stock was converted into the right to receive $24.75 per share in a merger of American Technical Ceramics Corp. into Admiral Byrd Acquisition Sub, Inc., a wholly owned subsidiary of the reporting person on September 25, 2007. Admiral Byrd Acquisition Sub, Inc. was merged into American Technical Ceramics Corp., with American Technical Ceramics Corp. as the surviving corporation. Pursuant to the merger, each outstanding share of Admiral Byrd Acquisition Sub, Inc. (1,000 shares total) was converted into one share of American Technical Ceramics Corp. common stock, each of which is beneficially owned by the reporting person immediately following the merger.

Kurt P. Cummings, Vice President and Chief Financial Officer    09/25/2007

** Signature of Reporting Person    Date

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, see Instruction 4 (b)(v).

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.

Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.

# Exhibit C

EX-99.1 3 exhibit991.htm AVX CORPORATION EXHIBIT 99.1 PRESS RELEASE
**EXHIBIT 99.1**

## AVX Enters into a Definitive Agreement to Acquire American Technical Ceramics Corp.

**MYRTLE BEACH, S.C. -- (BUSINESS WIRE) -- AVX Corporation (NYSE: AVX)** today announced that it has signed a definitive agreement to acquire American Technical Ceramics Corp. (AMEX: AMK) ("ATC").

John Gilbertson, President and Chief Executive Officer of AVX Corporation, stated, "The addition of ATC further broadens AVX's offering in High Reliability Products. ATC is a premier brand that we are proud to add to the Advanced Products Group of AVX. They are well recognized for their leadership in the area of High Frequency Applications for a broad range of commercial and military applications. No finer brand name exists in many of those markets today. The combination of AVX and ATC offers exciting growth potential for the years ahead."

In accordance with the agreement, AVX would acquire by merger all of the outstanding capital stock of American Technical Ceramics in exchange for approximately $231 million in cash, or $24.75 per share. The transaction is subject to approval of the American Technical Ceramics shareholders, and other conditions, including regulatory approvals, that are customary for transactions of this type. Mr. Victor Insetta, ATC's President and Chief Executive Officer, and certain affiliated shareholders, representing approximately 49% of the outstanding common stock of ATC, have agreed to vote their shares in favor of the transaction.

UBS Investment Bank acted as exclusive financial advisor to AVX on this transaction.

AVX Corporation is a leading worldwide manufacturer and supplier of a broad line of passive electronic components and interconnect products. AVX's components can be found in products manufactured in a very broad range of industries worldwide. AVX is headquartered in Myrtle Beach, SC. AVX can be found on the Internet at http://www.avx.com.

American Technical Ceramics Corp. designs, develops, manufactures and markets electronic components, including ceramic multilayer capacitors and custom thin film circuits. The Company's products are utilized in a broad range of commercial and military applications, including wireless infrastructure, fiber optics, medical electronics, semiconductor manufacturing equipment and satellite equipment. The company is headquartered in Huntington Station, New York.

This release contains statements concerning the anticipated benefits of the announced transaction, if it is consummated. These forward-looking statements are within the safe harbor provisions of the Private Securities Litigation Reform Act of 1995. They are based on current expectations and are subject to certain risks, uncertainties and assumptions. Factors that could cause results to differ from the Company's expectations include the ability of AVX to successfully integrate the business of American Technical Ceramics with the existing operations and factors affecting AVX's businesses generally. For factors affecting AVX's businesses generally, please see the Company's Report on Form 10-K for the fiscal year ended March 31, 2007 that has been filed with the Securities and Exchange Commission. The Company undertakes no obligation to publicly update or revise any forward-looking statements, whether as a result of new information, future events or otherwise, except as may be required by applicable law.

Contact:
AVX Corporation, Myrtle Beach
Kurt Cummings,
843-946-0691
finance@avxus.com

Source: AVX Corporation

# Exhibit D

10-Q 1 form10qq3fy08.htm AVX CORPORATION FORM 10Q

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION

Washington, DC 20549

# FORM 10-Q

__X__  Quarterly Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934
**For the quarterly period ended December 31, 2007.**

or

_____ Transition Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934
For the transition period from _____ to _____

Commission file number 1-7201

# AVX CORPORATION
(Exact name of registrant as specified in its charter)

| | |
|---|---|
| Delaware | 33-0379007 |
| (State or other jurisdiction of incorporation or organization) | (IRS Employer ID No.) |

| | |
|---|---|
| 801 17th Avenue South, Myrtle Beach, South Carolina | 29577 |
| (Address of principle executive offices) | (Zip Code) |

(843) 448-9411
(Registrant's phone number, including area code)

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.

Yes __X__   No _____

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer. See the definition of "accelerated filer and large accelerated filer" in Rule 12b-2 of the Exchange Act. (Check one):

Large accelerated filer ___X___      Accelerated filer _____      Non-accelerated filer _____

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).

Yes _____   No _X_

Indicate the number of shares outstanding of each of the issuer's classes of common stock, as of the latest practicable date.

| Class | Outstanding at February 1, 2008 |
|---|---|
| Common Stock, par value $0.01 per share | 171,203,440 |

## Business Overview

AVX is a leading worldwide manufacturer and supplier of a broad line of passive electronic components. Virtually all types of electronic devices use our passive component products to store, filter or regulate electric energy. We also manufacture and supply high-quality electronic connectors and inter-connect systems for use in electronic products.

We have manufacturing, sales and distribution facilities located throughout the world which are divided into three main geographic regions: the Americas, Asia and Europe. AVX is organized into five main product groups with three reportable segments: Passive Components, KED Resale and Connectors. The Passive Components segment consists primarily of surface mount and leaded ceramic capacitors, RF thick film and thin film components, tantalum capacitors, film capacitors, ceramic and film power capacitors, super capacitors, EMI filters, thick and thin film packages, varistors, and resistive products. The KED Resale segment consists primarily of ceramic capacitors, crystal oscillators, SAW devices, resistive products, RF modules, actuators, acoustic devices and connectors produced by Kyocera, and resold by AVX. The Connectors segment consists primarily of Elco automotive, telecom and memory connectors manufactured by AVX.

Our customers are multi-national original equipment manufacturers, or OEMs, independent electronic component distributors and electronic manufacturing service providers, or EMSs. We market our products through our own direct sales force and independent manufacturers' representatives, based upon market characteristics and demands. We coordinate our sales, marketing and manufacturing organizations by strategic customer account and geographically by region.

We sell our products to customers in a broad array of industries, such as telecommunications, information technology hardware, automotive electronics, medical devices and instrumentation, industrial instrumentation, defense and aerospace electronic systems and consumer electronics.

## Results of Operations - Three Months Ended December 31, 2007 and 2006

Net income for the quarter ended December 31, 2007 was $37.0 million, or diluted earnings per share of $0.22, compared to $35.8 million, or $0.21 diluted earnings per share for the quarter ended December 31, 2006.

| $(000's) | Three Months Ended December 31, | | | |
| --- | --- | --- | --- | --- |
| | 2006 | | 2007 | |
| Net Sales | $ | 378,088 | $ | 429,542 |
| Gross Profit | | 72,595 | | 73,806 |
| Operating Income | | 43,082 | | 40,467 |
| Net Income | | 35,827 | | 37,019 |
| Diluted Earnings per Share | $ | 0.21 | $ | 0.22 |

Net sales in the three months ended December 31, 2007 increased $51.4 million, or 13.6%, to $429.5 million compared to $378.1 million in the three months ended December 31, 2006. This increase is primarily a result of the inclusion of American Technical Ceramics Corp. ("ATC") which was purchased on September 25, 2007 into our Advanced Component product group coupled with the continued end-market growth and demand in the expanding electronics marketplace. Overall sales prices have remained relatively stable during the current quarter as a result of the continued high production capacity utilization needed to meet the strong end-market demand for electronics.

-16-

Gross profit in the nine months ended December 31, 2007 was 17.9% of sales or $217.3 million compared to a gross profit margin of 20.2% or $225.8 million in the nine months ended December 31, 2006. This decrease is attributable to several factors including a 33.9% increase in sales volume of our resale products with generally lower margins when compared to our manufactured products and a mix of lower margin sales of our Ceramics Components. In addition, gross profit was negatively impacted by the increased cost of raw materials and utilities, and the negative impact of currency translation as the U.S. dollar weakened against certain foreign currencies compared to the same period last year. The negative effect of currency translation of approximately $27.3 million, when compared to the same period last year, was primarily due to the currency movement on reported European costs of sales. We also incurred restructuring charges of $2.4 million related to headcount reductions in Europe as we continue to realign production capabilities. These increases in costs were partially offset by the Company's continued efforts to increase efficiency of our production, to lower operating costs and to pursue increased capacity for the production of value added products.

Selling, general and administrative expenses in the nine months ended December 31, 2007 were $93.5 million, or 7.7% of net sales, compared to $87.3 million, or 7.8% of net sales, in the nine months ended December 31, 2006. The overall increase in selling, general and administrative expenses was due to higher selling and other costs resulting principally from higher sales including the selling and general expenses related to ATC.

Income from operations declined $15.1 million to $123.4 million in the nine months ended December 31, 2007 compared to $138.5 million in the nine months ended December 31, 2006. This decrease is due to the factors discussed above including a $0.4 million charge related to the write off of in-process research and development cost related to the acquisition of ATC.

Other income increased $7.0 million to $32.7 million in the nine months ended December 31, 2007 compared to $25.7 million in the same period last year. This increase is predominately due to higher interest income resulting from higher interest rates and higher cash and securities investment balances.

The Company's effective tax rate for the nine-month period ended December 31, 2007 was 27.2% compared to 32.5% for the same period last year. This lower effective tax rate is primarily due to higher profits in lower tax jurisdictions in the current period when compared to the same period last year. In addition, the effective tax rate was favorably impacted from the benefit of our foreign branch losses taken as deductions in prior years' U.S. tax returns no longer subject to U.S. income tax recapture regulations and the benefit of a tax refund claim due to the changes in income tax rules in Germany, partially offset by the negative impact on certain deferred tax balances resulting from changes in enacted tax rates in the United Kingdom and Germany.

Outlook

*Near-Term:*

The electronic component industry in which we operate is cyclical. Near-term results for us will depend on growth in the economy and resulting expansion in the telecommunications, information technology hardware, automotive, consumer electronics and other electronic markets. We expect a continued pricing environment with below normal annual price declines as we believe the industry demand for our products is in line with component manufacturing capacity. Additionally, we expect to continue to focus on cost reductions through process improvements and enhanced production capabilities in conjunction with our focus on the sales of value added electronic components to support today's advanced electronic devices. We believe that the addition of ATC will benefit our Advanced Component product group with offerings of additional components for our end-user's sophisticated electronics, and contribute to our sales growth through the remainder of our fiscal year.

*Long-Term:*

We continue to be optimistic that opportunities for long-term growth and profitability will continue due to: (a) the continued increase as a long-term trend in worldwide demand for electronic devices which require our electronic components, (b) cost reductions and improvements in our production processes and (c) opportunities for growth in our Advanced Component and Connector product lines due to advances in component design and increased end-user demand for more sophisticated electronics.

-20-

Liquidity and Capital Resources

The Company's liquidity needs arise primarily from working capital requirements, dividend payments, capital expenditures and acquisitions. Historically, the Company has satisfied its liquidity requirements through funds from operations and investment income from cash and investments in securities. As of December 31, 2007, the Company had a current ratio of 6.3 to 1, $808.6 million of cash, cash equivalents and short-term and long-term investments in securities, $1.7 million in debt and $1.8 billion of stockholders' equity.

Net cash provided by operating activities was $133.3 million in the nine months ended December 31, 2007 compared to $196.2 million of cash provided by operating activities in the nine months ended December 31, 2006. The decrease in cash flow from operating activities compared to the same period last year was primarily a result of a reduction of income taxes payable, accounts payable and accrued expensesand increases in inventories and accounts receivable.

Cash used in investing activities was $211.5 million during the nine months ended December 31, 2007. We had cash outflows related to investing activities consisting of the business acquisition of ATC for $231.3 million, offset by cash acquired of $8.0 million. During the period ended December 31, 2007 we received a pro rata distribution of the underlying securities from a money market fund that was restructured by a major bank as a result of the current liquidity issues being experienced in the banking industry. As these assets are no longer considered cash and cash equivalents, we have classified them as available-for-sale investments. This will have no significant impact on our operations or liquidity needs.

As a result of the merger with ATC, the Company has obligations related to certain debt, customer, and supplier agreements. AVX repaid the bank debt related to the ATC merger during the three months ended December 31, 2007. See Note 11, "Debt" of the Notes to Consolidated Financial Statements in this Form 10-Q for additional information.

Purchases of property and equipment were $39.6 million in the nine month period ended December 31, 2007 compared to $37.3 million in the nine month period ended December 31, 2006. Expenditures for all periods were primarily in connection with the enhancement of production capabilities in our passive component manufacturing operations, process improvements in passive component product lines and expansion of production of certain advanced component and connector product lines. The carrying value for our equipment reflects the use of the accelerated double-declining balance method to compute depreciation expense for machinery and equipment. We continue to add additional capacity for advanced passive component and connector products and expect to incur capital expenditures of approximately $55 million in fiscal 2008. The actual amount of capital expenditures will depend upon the outlook for end-market demand.

The majority of the Company's funding is internally generated through operations and investment income from cash and investments in securities. Since March 31, 2007, there have been no significant changes in the Company's contractual obligations or commitments for the acquisition or construction of plant and equipment or future minimum lease commitments under noncancellable operating leases. The Company does not expect a material impact on liquidity as a result of the acquisition of ATC.

Based on the financial condition of the Company as of December 31, 2007, the Company believes that cash on hand and cash expected to be generated from operating activities and investment income from cash and investments in securities will be sufficient to satisfy the Company's anticipated financing needs for working capital, capital expenditures, environmental clean-up costs, research, development and engineering expenses, any acquisitions of businesses and any dividend payments or stock repurchases to be made during the year. While changes in customer demand have an impact on the Company's future cash requirements, changes in those requirements are mitigated by the Company's ability to adjust manufacturing capabilities to meet increases or decreases in customer demand. The Company does not anticipate any significant changes in its ability to generate or meet its liquidity needs in the long-term.

From time to time we enter into delivery contracts with selected suppliers for certain precious metals used in our production processes. The delivery contracts represent routine purchase orders for delivery within three months and payment is due upon receipt. As of December 31, 2007, we did not have any of these delivery contracts outstanding.

-21-

# Exhibit E

# NYS Department of State

# Division of Corporations

## Entity Information

Selected Entity Name: AMERICAN TECHNICAL CERAMICS CORP.

Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | AMERICAN TECHNICAL CERAMICS CORP. |
| **Initial DOS Filing Date:** | APRIL 15, 1985 |
| **County:** | SUFFOLK |
| **Jurisdiction:** | DELAWARE |
| **Entity Type:** | FOREIGN BUSINESS CORPORATION |
| **Current Entity Status:** | ACTIVE |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
AMERICAN TECHNICAL CERAMICS CORP.
KATHLEEN M. KELLY
1 NORDEN LANE
HUNTINGTON STATION, NEW YORK, 11746-2142

**Chairman or Chief Executive Officer**
VICTOR INSETTA
2201 CORPORATE SQUARE BLVD
JACKSONVILLE, FLORIDA, 32216-1921

**Principal Executive Office**
AMERICAN TECHNICAL CERAMICS CORP.
1 NORDEN LANE
HUNTINGTON STATION, NEW YORK, 11746-2142

**Registered Agent**
NONE

NOTE: New York State does not issue organizational identification numbers.

Search Results    New Search

Division of Corporations, State Records and UCC Home Page    NYS Department of State Home Page

**Exhibit F**



AVX Corporation
P.O. Box 867
Myrtle Beach, SC 29578-0867
Tel: (843) 448-9411

November 6, 2007

By Federal Express and Certified Mail

Judah Wolf
4206 Laurel Oak Way
Ponte Vedra Beach, FL 32087

    Re:   *Resignation*

Dear Mr. Wolf:

    I have been informed that you have resigned from your position at ATC. I am sorry to hear of your decision. In connection with this resignation, I must remind you of several obligations that continue past your last day.

    I would like to focus on two central points. First, you are obliged to maintain the confidentiality of all corporate information, including sales plans, customer lists, specifications, internal know-how, and the like. It is our view that, in the event you obtain employment with any entity that competes with ATC, is a supplier or potential supplier of ATC, or is a customer or potential customer of ATC, it is preferable if ATC/AVX work out ahead of time a mechanism to make sure that this confidentiality obligation is maintained. Should you fail to do so, we reserve the right to contact your employer directly to raise our concerns. Please note that AVX/ATC takes this obligation very seriously and will pursue all legal avenues to ensure this contractual obligation is strictly complied with.

    Second, you are subject to a two-year non-competition obligation. Under the contract, your resignation obviates any obligation by ATC/AVX to continue to pay your salary for the next two years in order for the non-competition obligations to continue. Accordingly, you must abide by these provisions. Again, AVX/ATC takes this obligation seriously and will enforce it. You should, of course, consult with your own counsel to get legal advice, but AVX/ATC takes the position that any violation will constitute the basis for injunctive relief against you and any putative employer as well as a claim for legal damages. If you have any questions or doubts concerning whether an activity will violate such clause, we will be happy to review such activity beforehand to give you our views.

    In light of the importance of the foregoing obligations, I request a confirmation of your intent to abide by them in writing or by email by close of business Friday, November 9. Should there be a disagreement, or should you fail to respond, or should

you fail in your undisputed obligations, ATC/AVX reserves the right to seek immediate relief in court.

> PLEASE NOTE THAT FAILURE TO TIMELY RESPOND TO THIS LETTER MAY HAVE LEGAL IMPLICATIONS. PLEASE CONSULT WITH A LAWYER AT YOUR EARLIEST CONVENIENCE. TO THE EXTENT NECESSARY AND APPROPRIATE, THIS LETTER CONSTITUTES A FORMAL DEMAND FOR PERFORMANCE.

I look forward to hearing from you.

Sincerely,

Evan Slavitt
Vice President for Business and
Legal Affairs
eslavitt@avxus.com